The court did not err in sustaining the general demurrers to both counts of the petition as finally amended.
 DECIDED OCTOBER 22, 1948. REHEARING DENIED NOVEMBER 13, 1948.
George H. Tisinger and George H. Tisinger Jr. sued Dr. Lawrence A. Woolley and Emory University (operator of Emory University Hospital) in two counts, for damages for the death of the wife and mother, respectively, of the plaintiffs, alleged to have resulted from the negligence of the defendants. Each of the defendants demurred to both counts of the petition as a whole on the grounds that there was a lack of jurisdiction, a misjoinder of causes of action, and of parties defendant, and on the grounds that the petition was multifarious, and to nearly every paragraph in the petition on the ground that each was a mere conclusion. One of the judges of Fulton Superior Court, Judge Bond Almand, sustained most of the special demurrers and the plaintiffs amended the petition by striking the same in its entirety and by striking Emory University as a defendant and proceeding against Dr. Woolley in two counts. The first count alleged that Mrs. George H. Tisinger jumped from the window of her room in the hospital; the second, that she fell therefrom, as a result of which she died. Paragraph 6 of Dr. Woolley's demurrer to the original petition, on the ground that there was a misjoinder of causes of action in that the petition fails to allege facts showing that any negligence of Dr. Woolley was the proximate cause of, or contributed to, the death of the patient, was sustained. Special demurrers to various paragraphs were also sustained. The order sustaining the demurrers provided that plaintiffs were given 20 days in which to amend to meet the terms of the order, in default of which count one should "stand stricken." A similar order was passed as to count two and that if not amended in 20 days it would "stand dismissed." Within the 20 days allowed for amendment the plaintiffs amended by striking the entire original petition and substituted a two-count petition against Dr. Woolley as the only defendant, the substantial difference between the two counts being the *Page 19 
same as between the two in the original petition. Dr. Woolley demurred to the petition as amended and renewed his original demurrers.
In March, 1948, more than 20 days from the time allowed for amendment the plaintiffs presented another amendment which was allowed subject to demurrer and the defendant demurred to the petition as amended and renewed both demurrers theretofore filed. On May 27, 1948, another judge of Fulton Superior Court, Judge Ralph H. Pharr, passed an order on the demurrers of the defendant, in which he sustained the general demurrers to both counts of the petition and also sustained numerous grounds of special demurrer. To this order the plaintiffs excepted.
The first amendment alleged: Count one (3) "Said physician holds himself out as and represents himself to be an expert or specialist in the diagnosis and treatment of nervous and mental disorders." (4) "Mrs. George H. Tisinger, deceased, was the wife of George H. Tisinger and the mother of only one child, said George H. Tisinger Jr., and will hereinafter be referred to as said patient." (5) "Said patient went to said physician for examination, diagnosis and treatment on or about July 1st, 1946." (6) "Said patient was from said examination under the care and treatment of said physician till her death, August 4, 1946." (7) "On or about July 27th, 1946, said physician directed said patient and insisted that she go to Emory University Hospital." (8) "On or about the 27th day of July, 1946, said hospital admitted and received said patient." (9) "The illness which confined said patient to said hospital was mental." (10) "Said hospital is not properly equipped to care for mental patients, because windows in its rooms were not securely protected, and it has no physicians or nurses of proper skill and competence to have charge of mental patients." (11) "Said hospital is not properly staffed to care for mental patients, because it has no nurses or other attendants specially skilled or trained to care for mental patients, and did not have sufficient nurses or attendants of any kind to keep a constant watch over patients in July and August, 1946." (12) "Said physician knew when he sent said patient to said hospital that said hospital was not properly equipped nor staffed to care for mental patients." *Page 20 
(13) "When said patient was sent to said hospital petitioners did not know that said hospital was not properly equipped nor properly staffed to care for mental patients." (14) "On information and belief petitioners allege said mental derangement of said patient was curable." (15) "On information and belief petitioners allege that with proper care, treatment and attention said patient could have been cured of said mental derangement within approximately three to six months." (16) "Said mental derangement was of such nature as would cause its victim to kill or injure herself, but petitioners have never been able to learn from defendant the nature or name of said disorder, although petitioners have sought this information from defendant who should have it." (17) "The condition of said patient was well known to defendant when she entered said hospital, or in the exercise of ordinary care should have been known." (18) "The condition of said patient was unknown to petitioners who are laymen." (19) "Defendant should have known that in her mental condition said patient would commit suicide or do herself some serious bodily harm, because on information and belief petitioners allege defendant has had previous experience with similar cases where the patient did commit suicide, and from such previous experience defendant should have anticipated that said patient would most likely commit suicide or try to escape from said hospital and injure herself." (20) "It was the duty of said physician to use reasonable and ordinary care to determine whether said patient was in such a condition as to reasonably require the constant attendance of a nurse or other competent attendant, because he was familiar with the custom and practice of said hospital to provide only part time care for patients." (21) "It was the duty of defendant to advise that said patient should be constantly safeguarded against harm or danger to herself." (22) "It was the duty of said physician to have anticipated that said patient would fall or jump out the window of said hospital if not prevented in an attempt to escape or destroy herself, and to have advised petitioners and said hospital so that an attendant or nurse could be assigned to constantly guard and protect said patient against such tragedy." (23) "It was the duty of said physician to have advised said hospital to assign said patient to a room from which she could not jump *Page 21 
or fall to her death, because he knew or in the exercise of ordinary care should have known she would commit suicide if not prevented until she could recover her mental health." (24) "It was the duty of said physician to have advised said hospital and petitioners that a constant attendant for said patient was necessary to prevent her from trying to commit suicide or escape from said hospital and get hurt." (25) "It was the duty of said physician to have advised said hospital of the nature and extent of said mental derangement of said patient and also to advise petitioners, because he knew, or in the exercise of ordinary care should have known, that said patient would commit suicide unless closely watched and cared for until she could regain her mental health, or would try to escape from said hospital and get hurt." (26) "It was the duty of defendant to have notified petitioners that said patient was not to be placed in a room from which she might escape and hurt herself, because defendant has had previous experience with similar cases, and therefore had reason to anticipate that said patient would try to escape from said hospital through a window or jump therefrom to her death whereas petitioners were laymen and relied on defendant as they had a right to do to advise them as to the care required by the condition of said patient." (27) "It was the duty of said physician to advise petitioners before sending said patient to said hospital that said hospital was not properly equipped nor staffed to care for a mental patient, because said physician knew said hospital was not properly staffed nor equipped to handle such cases, because he had had previous experience with said hospital and petitioners had not." (28) "It was the duty of said physician to have furnished said hospital and petitioners with his diagnosis of said patient's illness, in order that said hospital might know what precautions to take for the safety of said patient, and in order that petitioners might know what precautions to take to safeguard said patient in event said hospital failed to take such precautions." (29) "It was the duty of said physician to have warned petitioners and said hospital of the likelihood that said patient would try to commit suicide, because he knew or should have known that she would try to commit suicide, and that unless said hospital were advised thereof it would not assign her to a room from which she could not *Page 22 
escape and hurt herself nor would it or petitioners obtain a constant guard or attendant for such patient without such information from said physician." (30) "It was the duty of said physician to properly examine said patient and diagnose her illness." (31) "It was the duty of said physician to have and to use reasonable care and skill to properly examine said patient and diagnose her illness." (32) "If he could not determine otherwise it was the duty of said physician to have obtained or advised the employment of some more skillful, experienced and competent physician to aid him or to have consulted with him." (33) "On information and belief petitioners allege that about 7 o'clock a. m. August 4th, 1946, said patient jumped from the window of her room to a concrete driveway below causing her immediate death." (34) "The room from which said patient jumped was located high above said driveway on the seventh floor of said hospital." (35) "The death of said patient was due to the concurrent negligence of defendant and said hospital hereinafter set out." (36) "Said physician failed to anticipate said patient would jump to her death if not prevented, and this was negligence." (37) "Said physician failed to advise said hospital or petitioners to assign and constantly keep with said patient a nurse or other suitable and competent attendant, and this was negligence." (38) "Said physician failed to properly diagnose the illness of said patient because he failed to use reasonable care and skill to discover the cause and extent of said mental derangement by having an experienced competent nurse or other skilled and competent attendant to constantly attend, observe and keep an accurate record of every act and symptom or manifestation of the mental processes of said patient, or to consult with some more skillful, experienced and competent physician or to obtain or suggest the employment of one, and this was negligence." (39) "Said physician failed to use reasonable care and diligence to prescribe the proper course of treatment for said patient by said hospital because he negligently failed to determine what was proper to be done, or because he carelessly failed to prescribe a constant attendant, and this was negligence." (40) "Said physician failed to furnish said hospital and petitioners with full and complete information on the nature and extent of said patient's mental derangement and this was negligence, *Page 23 
because said physician knew or should have known that said patient would try to escape from said hospital and commit suicide unless she were constantly attended and prevented and that such attendance would not be provided if it were not advised." (41) "Said physician failed to send said patient to a hospital properly equipped and staffed to care for a mental patient and failed to suggest that petitioners do so, and this was negligence." (42) "Said physician failed to advise petitioners before sending said patient to said hospital that said hospital was not properly equipped nor staffed to treat and care for said patient, although he knew it was not from his previous experience, and this was negligence." (43) "Said physician failed to instruct said hospital to have doctors, nurses, and attendants possessed of sufficient knowledge, training, and skill to enable them to exercise the proper, reasonable, and ordinary care the condition of said patient required, and this was negligence, because said physician in dealing with said hospital, knew no adequate competent nursing or other expert service would be provided unless requested or suggested, and he knew he had not made any such suggestion to petitioners." (44) "Said defendant failed to anticipate that said patient, in her condition, would try to get out of her room and escape, and this was negligence." (45) "Defendant failed to anticipate that said patient would commit suicide or do herself bodily harm unless prevented and this was negligence." (46) "Said defendant failed to notify petitioners that a special nurse or other competent attendant to constantly attend said patient would be necessary and this was negligence." (47) "Defendant failed to notify petitioners or either of them that said patient would be assigned to a room from which she could escape and hurt herself, and that in her mental condition she was likely to do so, although, in the exercise of ordinary care defendant knew she would, and this was negligence." The foregoing is the first count of the amendment. The second count is the same with the exception above noted and one other which will be referred to in the opinion. The amendment filed in March, 1948, as to both counts, is as follows: Count one (1) "Plaintiffs amend paragraph 10 of their amended petition by alleging at the end of said paragraph the following: Said windows in the rooms of said hospital were *Page 24 
not securely protected in that they were not locked or otherwise fastened so that a patient suffering from a mental derangement could not open the same and escape or fall therefrom, and the only physicians or nurses with which said hospital was equipped were student nurses, and there was no physician, but only inexperienced internes without experience in handling mental cases, and there were not enough nurses or internes kept by said hospital to exercise reasonable care for such patients, because patients kept the signal lights over their doors burning sometimes 5, 10, or 15 minutes signaling for a nurse before one was available at the time said deceased was placed in said hospital, although all the nurses were busy and worked to death all the time, and said physician knew this condition prevailed before he had said deceased sent to said hospital, but he did not disclose this condition to petitioners, and on the contrary advised petitioners that said hospital was well equipped and staffed to handle such a case, and petitioners need not worry, that said deceased would receive all necessary care and attention." (2) "Plaintiffs amend paragraph 12 of their amended petition by alleging at the end thereof the following: Said physician was in and out of said hospital seeing and treating patients almost daily at and prior to the time he had said deceased sent to said hospital, and was, or in the exercise of ordinary care should have been, familiar with said hospital, its rooms, its arrangement, its staff, facilities, and services, and particularly the care, custody, and attention given mental cases, in consequence of which he knew, or in the exercise of ordinary care should have known, of the conditions prevailing at said hospital, and wherein it was lacking in equipment, personnel, service, and suitableness to have the care, custody and charge of said patient in the condition from which she was suffering when she entered said hospital." (3) "Plaintiffs amend paragraph 16 of their amended petition by alleging at the end thereof the following: Defendant knew, or in the exercise of ordinary care should have known, the name and nature of the disorder with which said deceased was afflicted at the time she entered said hospital, on account of which disorder, on information and belief, petitioners allege said deceased jumped or fell to her death from the window of the room to which she was assigned in said hospital, because said defendant *Page 25 
represented to the husband of said deceased that said defendant was familiar with her condition and could relieve it, but defendant has failed and refused to disclose to petitioners the nature of said affliction although the husband of said deceased inquired of said defendant to determine what was the nature of his wife's affliction and the probable duration thereof and whether said husband should provide a constant nurse or attendant for said deceased, but said defendant negligently assured petitioner that he had nothing to worry about, and that no nurse or attendant in addition to that provided by the hospital would be necessary, stating to the husband of said deceased that his wife would be properly cared for by said hospital, and that said hospital was the only proper and suitable place for her." (4) "Plaintiffs amend paragraph 21 of their amended petition by alleging at the end thereof the following: On information and belief plaintiffs allege that defendant knew, or in the exercise of ordinary care should have known, that said deceased would take some dangerous drug or an overdose thereof if it were not kept away from her, but he negligently failed to instruct or advise petitioners or said hospital to keep such drugs away from said patient, and on information and belief petitioners allege that said deceased obtained in the absence of any nurse or attendant from some place in her room unknown to petitioners, some poisonous or dangerous drug and took the same which caused said deceased, or contributed to the cause for her getting out of her window and jumping or falling to her death, and the failure of said physician to caution petitioners or said hospital against leaving such drugs where said patient could obtain the same was negligence." (5) "Plaintiffs amend paragraph 27 of their original petition as heretofore amended by adding at the end thereof: Said physician knew, or in the exercise of ordinary care should have known, of the type of windows that were in the room to which said deceased was assigned and how they were kept closed, because said physician was in almost daily contact with said hospital, its various wards, rooms, facilities, personnel and services, and that they were not fastened so as to prevent a patient suffering from the affliction or disorder with which said deceased was afflicted from opening and jumping or falling from one of said windows to the pavement outside." Count two (6) "Plaintiffs amend paragraph 62 of their amended *Page 26 
petition by alleging at the end of said paragraph the following: Said windows in the rooms of said hospital were not securely protected in that they were not locked or otherwise fastened so that a patient suffering from a mental derangement could not open the same and escape or fall therefrom, and the only physicians or nurses with which said hospital was equipped were student nurses, and there was no physician, but only inexperienced internes without experience in handling mental cases, and there were not enough nurses or internes kept by said hospital to exercise reasonable care for such patients, because patients kept the signal lights over their doors burning sometimes 5, 10, or 15 minutes signaling for a nurse before one was available at the time said deceased was placed in said hospital, although all the nurses were busy and worked to death all the time, and said physician knew this condition prevailed before he had said deceased sent to said hospital, but he did not disclose this condition to petitioners, and on the contrary advised petitioners that said hospital was well equipped and staffed to handle such a case, and petitioners need not worry; that said deceased would receive all necessary care and attention." (7) "Plaintiffs amend paragraph 64 of their amended petition by alleging at the end thereof the following: Said physician was in and out of said hospital seeing and treating patients almost daily at and prior to the time he had said deceased sent to said hospital, and was, or in the exercise of ordinary care should have been, familiar with said hospital, its rooms, its arrangement, its staff, facilities, and services, and particularly the care, custody, and attention given mental cases, in consequence of which he knew, or in the exercise of ordinary care should have known, of the conditions prevailing at said hospital, and wherein it was lacking in equipment, personnel, service, and suitableness to have the care, custody and charge of said patient in the condition from which she was suffering when she entered said hospital." (8) "Plaintiffs amend paragraph 68 of their amended petition by alleging at the end thereof the following: Defendant knew, or in the exercise of ordinary care should have known, the name and nature of the disorder with which said deceased was afflicted at the time she entered said hospital, on account of which disorder, on information and belief, petitioners allege said deceased jumped or fell to her death from the window *Page 27 
of the room to which she was assigned in said hospital, because said defendant represented to the husband of said deceased that said defendant was familiar with her condition and could relieve it, but defendant has failed and refused to disclose to petitioners the nature of said affliction although the husband of said deceased inquired of said defendant to determine what was the nature of his wife's affliction and the probable duration thereof and whether said husband should provide a constant nurse or attendant for said deceased, but said defendant negligently assured petitioner that he had nothing to worry about, and that no nurse or attendant in addition to that provided by the hospital would be necessary, stating to the husband of said deceased that his wife would be properly cared for by said hospital, and that said hospital was the only proper and suitable place for her." (9) "Plaintiffs amend paragraph 71 of their amended petition by alleging at the end thereof the following: On information and belief plaintiffs allege that defendant knew, or in the exercise of ordinary care should have known, that said deceased would take some dangerous drug or an overdose thereof if it were not kept away from her, but he negligently failed to instruct or advise petitioners or said hospital to keep such drugs away from said patient, and on information and belief petitioners allege that said deceased obtained in the absence of any nurse or attendant from some place in her room unknown to petitioners, some poisonous or dangerous drug and took the same which caused said deceased, or contributed to the cause for her getting out of her window and jumping or falling to her death, and the failure of said physician to caution petitioners or said hospital against leaving such drugs where said patient could obtain the same was negligence." (10) "Plaintiffs amend paragraph 81 of their amended petition by alleging at the end thereof the following: Said physician knew, or in the exercise of ordinary care should have known, of the type of windows that were in the room to which said deceased was assigned and how they were kept closed, because said physician was in almost daily contact with said hospital, its various wards, rooms, facilities, personnel and services, and that they were not so fastened as to prevent a patient suffering from the affliction or disorder with which said deceased was afflicted from opening and jumping or falling from one of said windows to the pavement outside." *Page 28 
In the view we take of this case it is unnecessary to decide whether the various rulings by Judge Almand became the law of the case and whether the first amendment was sufficient to open the case for further amendment. Assuming for the sake of argument that the first amendment opened the case for further amendment, we think that Judge Pharr properly sustained the general demurrers to both counts of the petition. The demurrer to the first count was properly sustained because it is not alleged therein that the patient was not attended by a nurse at the time she is alleged to have jumped to her death and consequently the allegations are not sufficient to show that the negligence of the defendant, rather than that of the hospital, was the proximate cause of the patient's death. The demurrer to the second count was properly sustained. In the last amendment it was alleged that in the absence of a nurse certain things occurred, but it is nowhere alleged as a fact that the absence of a nurse was due to the defendant's negligence; it was not alleged that at the time of the tragedy there was no nurse or attendant assigned to the patient. The allegation that no nurse or attendant was assigned to constantly watch and guard the patient does not suffice. Failure to have the patient guarded at a time when the failure amounted to nothing would not be actionable negligence if the patient was guarded at a crucial time, and would not be negligence as to the defendant if a guard was assigned for duty by the hospital and neglected it.
The court did not err in sustaining the general demurrer to both counts and dismissing them.
Judgment affirmed. Sutton, C. J., and Parker, J., concur.